343 P.2d 731

Maude Cox PETERSON, Plaintiff and Appellant,

v.

Joseph NIELSEN, Defendant and Respondent.

No. 8605.

Supreme Court of Utah.

Sept. 8, 1959.

Christenson, Novak & Paulson, Provo, Sterling R. Bossard, Richfield, for appellant.

Udell R. Jensen, Nephi, for respondent.

CROCKETT, Chief Justice.

This case involves a claim and counterclaim arising out of an intersection colli-

sion. Upon trial the court found both guilty of negligence which proximately caused the collision and the case was dismissed. Plaintiff appeals.

Foundational facts: time: about 5 p. m. on the afternoon of April 5, 1955; place: about one mile south of Ephraim, Sanpete County, on U. S. Highway 89 where it is intersected by Shumway Road; weather: clear and fair. Plaintiff was driving her passenger car southward on 89, a hard asphalt surfaced highway; defendant was driving a pickup truck eastward onto the highway from Shumway Road, which is a gravelled side road.

As defendant approached the highway from the west he obeyed a stop sign and pulled up within six to ten feet of the surfaced portion of 89 and stopped, waiting for a car approaching from the south (herein called the Holbrook car) to pass. After it passed, without looking to the north, he proceeded onto the highway and when his front wheels were about three feet onto the hard surface his truck was struck by plaintiff's car.

The court found that when plaintiff was 900 to 1,000 feet north of the intersection, she saw defendant's truck approaching the highway. She then decreased her speed to between 50 and 60 m. p. h. until she was about 400 to 500 feet from the intersection, at which time defendant came to a stop.

Plaintiff then increased her speed and continued on until she saw defendant start up onto the highway. At that time plaintiff applied her brakes. She left skid marks 41 to 45 feet before impact with the defendant's truck; then veered to the left and skidded 57 to 64 feet before coming to a stop.

█ It is unquestioned that the evidence supports the finding that the defendant, by proceeding onto the highway without looking to the north, was negligent, and that his negligence was a proximate cause of the collision. Our concern is whether this was the sole proximate cause, or was the plaintiff guilty of negligence which also contributed as a proximate cause of the collision, thus barring her right to recover.[1] On that issue the burden was upon the defendant.[2] The court found that plaintiff was traveling at a speed greater than reasonable and prudent under the existing conditions; that she failed to sound her horn; and failed to observe that the defendant had his attention focused on the Holbrook car, approaching from the south.

In the instant case, any reasonable analysis of the specific findings as to speeds and distances, and the facts necessarily incident to them, will show that the plaintiff could not have avoided the accident by exercising due care. The court found that plaintiff, as she initially approached the scene, was

1. Raymond v. Union Pac. R. Co., 1948, 113 Utah 26, 191 P.2d 137.

2. U.R.C.P. 8(c); Stickle v. Union Pac. R. Co., 1952, 122 Utah 477, 251 P.2d 867.

traveling faster than 60 m. p. h. (the prima facie safe speed); that as she neared the intersection she decreased her speed to between 50 and 60 m. p. h. until she was 400 to 500 feet north of where she observed the defendant stop; that she then increased her speed. It is not stated how much except that, "she was traveling at a speed greater than safe and reasonable" at the time defendant started up. It is to be noted that the finding is not clear as to the speed she was traveling; nor is the basis indicated upon which the trial court regarded it as unsafe.

█ The plaintiff on the arterial highway had the right of way over the defendant entering from the side road. In addition to being aware of the defendant's presence, she had to give some attention to the management of her own car and to other traffic on the highway. She thus could not become absorbed in the detail of what defendant was doing. It is not to be regarded as within the standard of due care to require her, from the distance she was away, to observe where the defendant was looking as he sat inside the cab of his truck; nor was she bound to suspect that he had not looked to the north and seen her approach; nor to anticipate that he would proceed upon the highway without again looking north.

█ Having observed the defendant stop as he was about to enter the highway, at any time after plaintiff was close enough to constitute an immediate hazard to him, she could assume that he would remain stopped and accord her the right of way. She could continue to rely on that assumption until she observed, or should have observed, something to warn her to the contrary.[3] It may be true that a high degree of caution would have impelled her to apprehend that the defendant might suddenly dart on to the highway in front of her. But she was not obliged to do so. While extraordinary caution is commendable, it is not required as a standard of conduct. The concept of contributory negligence must not be so extended as to require one to drive under the apprehension that the other driver will be guilty of a sudden burst of negligence. If all drivers were required to be that cautious and await upon each other, it would seriously impede the movement of traffic and make driving upon modern high speed arterial highways quite impractical.

The problem then is: at the instant defendant started up from his stopped position, was the plaintiff far enough to the north that she could have avoided the collision?

The skid marks left by the plaintiff's car of 41 to 45 feet, plus 66 feet she would have

3. See Martin v. Stevens, 1952, 121 Utah 484, 243 P.2d 747.

traveled in ¾ seconds reaction time (88 feet per second at 60 m. p. h.) would make a total of only 111 feet she would have been north of the point of impact when defendant moved forward. As will be seen below, this would not have been even half the stopping distance required at that speed. However, the findings are susceptible of analysis from which it can be surmised that the plaintiff may have been somewhat farther to the north at the critical instant referred to, but not far enough to give her a chance to avoid the collision.

■ The evidence is that the defendant was looking southward toward the oncoming Holbrook car and that he did not start until it passed him. At that instant the distance the plaintiff was to the north can be calculated from two figures: (1) the "75 to 100" feet north at which point the court found plaintiff passed the Holbrook car, plus (2) the additional distance plaintiff had traveled while the Holbrook car got from the intersection to that point. For the purpose of meeting defendant's argument, take the findings in the light most favorable to him: that the Holbrook car traveled "50 to 55 m. p. h."; at 50 m. p. h., which is 75 feet per second, it would travel the 100 feet in 1⅓ seconds. During that

time at 60 m. p. h. the plaintiff, at 88 feet per second would travel 117 feet, which added to the 100 feet, would make a total of 217 feet, the greatest distance north of the intersection plaintiff could have been at the time the defendant started up, based upon the figures in the findings made by the court. At the legal speed of 60 m. p. h., allowing ¾ second reaction time, even with the highest coefficient of friction and maximum deceleration, her stopping distance would be 251 feet.[4] Thus she would have collided with him had she been traveling at the lawful speed, or even at a considerably lesser one. So her speed cannot be regarded as a proximate cause of the collision.

The conclusion that under any reasonable view of the facts found there was nothing the plaintiff could have done to avoid the collision is in conformity with the literal words of the finding of the court, that the plaintiff, " * * * continued on until she saw the defendant start on the highway *at which time* she applied her brakes * * *" and that " * * * her brakes were good." (Emphasis added.)

It is obvious that in the emergency the plaintiff was confronted with when the defendant started to move forward, due care would not require the sounding of her horn.

4. For distances traveled, reaction time and braking distances, see Chart published by Utah Highway Patrol; see Gittens v. Lundberg, 1955, 3 Utah 2d 392, 284 P.2d 1115.

Inasmuch as defendant was entering onto the highway she was too close to avoid the collision, blowing the horn as she crashed into the truck would have been futile except to add to the resulting cacophony.

This question naturally occurs to one's mind: why did not the plaintiff turn to her left to avoid the collision? Defendant charged her failure to do so as a ground of negligence in his pleadings. However, the evidence showed that there was a truck coming northward which would have made this impossible or extremely hazardous, and the trial court made no finding against her in that regard.

The judgment dismissing defendant's counterclaim is affirmed. In view of the inconsistency between the findings made and the conclusions reached by the trial court the case is remanded for a new trial on the issue as to plaintiff's right to recover. Costs to plaintiff (appellant).

LESTER A. WADE and McDON-OUGH, JJ., concur.

HENRIOD, J., does not participate herein.

WORTHEN, J., heard argument but died before the opinion was filed.